UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LULL, | No. 2:18-cv-1020-MCE-EFB PS |
| Plaintiffs, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COUNTY OF SACRAMENTO, et al., | |
| Defendants. | |

This case was before the court on February 6, 2019, for hearing on defendants' motion to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[1] ECF No. 17. Attorney Jonathan Paul appeared on behalf of defendants, and plaintiff appeared pro se. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

I. <u>Factual Allegations</u>

According to the first amended complaint, plaintiff owns commercial property located in the County of Sacramento. ECF No. 16 at 3. In January 2017, he allegedly contacted the defendants and requested to pay his assessed property taxes in one-dollar bills as a method for protesting and criticizing elected government officials. *Id*. at 4. Defendants agreed to accept that method of payment, which plaintiff submitted without incident the following month. *Id*. At the

---

[1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Eastern District of California Local Rule 302(c)(21).

1

time the payment was submitted, plaintiff expressed complaints "about taxation without representation and simultaneously distributed several novelty dollars that depicted defendant FROST's face in the middle of the dollar to symbolize the protest and [plaintiff's] criticism of FROST." *Id*. Plaintiff recorded his protest and subsequently provided Frost with a copy of the video footage. *Id*. Plaintiff also notified defendants that he would continue to protest his tax payments until Frost agreed to meet with him. *Id*.

Shortly thereafter, defendant Aspesi allegedly notified plaintiff that defendants Lamera, Frost, and Penrose were working on a policy to stop plaintiff from paying his property taxes with one-dollar bills. *Id*. at 4-5. Although no such policy had been approved, defendants Lamera, Frost, and Penrose instructed Aspesi "to refuse to accept any cash payments in One Dollar Bills in order to chill Lull's protest efforts." *Id*. at 5. The following month, plaintiff allegedly criticized the individual defendants for their efforts to prevent further protests. *Id*.

On April 10, 2017, plaintiff attempted to conduct another protest by paying his taxes with one-dollar bills. *Id*. at 5-6. Before plaintiff could reach the tax collection department, a security officer acting under instructions from the individual defendants asked plaintiff to leave. *Id*. at 6. Plaintiff ignored the request and approached defendant Aspei at the public payment counter, but Aspei refused to accept plaintiff's payment. *Id*. Plaintiff claims, however, that he witnessed several other people making property tax payments in cash. *Id*.

The amended complaint alleges three claims under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment and violation of plaintiff's substantive due process and equal protection rights under the Fourteenth Amendment. *Id*. at 8-11.

II. Rule 12(b)(6)'s Standards

A complaint may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but it requires more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Chubb Custom Ins. Co.*, 710 F.3d at 956. Dismissal also is appropriate if the complaint alleges a fact that necessarily defeats the claim. *Franklin v. Murphy*, 745 F.2d 1221, 1228-1229 (9th Cir. 1984).

Pro se pleadings are held to a less-stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). However, the Court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (citing *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

For purposes of dismissal under Rule 12(b)(6), the court generally considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice, and construes all well-pleaded material factual allegations in the light most favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

III. Discussion

Defendants move to dismiss the first amended complaint, arguing that the complaint fails to allege facts sufficient to state a claim. They further argue that the individual defendants are entitled to qualified immunity. ECF No. 17-1.

A. Sufficiency of Plaintiff's Allegations

Defendants advance two overarching arguments in support of dismissal of all claims. First, they argue that plaintiff's amended complaint must be dismissed in its entirety because it fails to allege the factual basis for plaintiff's claims. This is so, according to defendants, because plaintiff does not identify the specific policy he challenges, its terms, and how it was applied to

/////

/////

him. *Id*. at 4. They further argue that due to this lack of clarity plaintiff fails to state a § 1983 claim against the County.[2]

Although the amended complaint is not a model of clarity, the factual predicate that he relies on is stated plainly enough. It specifically alleges that defendants have enacted a policy "arbitrarily forbidding tax payments in lawful U.S. Currency consisting of coinage and 1 (one) Dollar bills . . . ." ECF No. 16 at 1. Plaintiff also alleges that he attempted to pay his property taxes with one-dollar bills as a form of protest, but defendant Aspesi refused to accept his payment. *Id*. at 6. These allegations are sufficient to provide defendants with notice of the nature of the policy plaintiff alleges and how he says it was applied to him. The more pressing question is whether such a policy is actionable under § 1983.

Defendants contend that each of plaintiff's § 1983 claims fail because policies regulating the form of payment are not unlawful under 31 U.S.C. § 5103. In advancing this argument, defendants correctly note that numerous courts have held that 31 U.S.C. § 5103[3] does not preclude restrictions on the form of acceptable payments. *See, e.g., Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 458 (6th Cir. 2009) (holding that city ordinance requiring payment for scrap metal by check or money order was not barred by 31 U.S.C. § 5103); *McManus v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 2014 WL 794566, at *2 (D. Md. Feb. 26, 2014) (finding that nothing in 31 U.S.C. § 5103 "prohibits imposing restrictions on the acceptable form of payment for a debt."); *In re Reyes*, 482 B.R. 603, 606 (D. Ariz. Oct. 16. 2012) (finding that § 5103 did not prohibit bankruptcy court from requiring payment be made "using only certified funds, automatic wage withdrawals, or electronic transfers."); *Genesee Scrap & Tin Baling Co., Inc. v. City of Rochester*, 558 F. Supp. 2d 432, 436 (W.D.N.Y. 2008) (finding

---

[2] To succeed on a § 1983 claim against a municipal entity, a plaintiff must establish that the entity "had a deliberate policy, custom, or practice that was the moving force behind the alleged constitutional violation he suffered." *See Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007).

[3] 31 U.S.C. § 5103 provides as follows: "United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues."

ordinance requiring payments by check for purchases of scrap metal did not conflict with § 5103 because it did not "attempt to confer legal-tender status upon checks, nor d[id] it deem cash not to be legal tender.").

Plaintiff, however, does not claim that the defendants' policy is unconstitutional simply because it places limitations on the acceptable forms of payment. Instead, plaintiff claims that defendants' policy was enacted specifically to interfere with the free exercise of his First Amendment rights. The mere fact that the challenged policy does not run afoul of § 5103 does not compel a finding that its implementation was constitutional under the circumstances alleged in plaintiff's complaint. *See O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016) ("[L]awful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment.").

B.  First Amendment

Defendants argue that plaintiff fails to state a First Amendment claim because he does not allege that "the challenged policy prevents [him] from continuing to make protest videos and to distribute novelty dollars, that it favors a different view point, or that the First Amendment creates a right to pay property taxes with $1 bills." ECF No. 17-1 at 5 (citing *Clark v. Comm. for Creative Non-Violence*, 468 U.S. 288, 293 (9th Cir. 1984) (expression, whether verbal or symbolic, is subject to reasonable, content-neutral time, place or manner restrictions)). But defendants' argument fails to appreciate that plaintiff's First Amendment claim is based upon retaliation.

"A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiffs First Amendment rights." *Az. Students' Assn. v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). To state First Amendment relation claim, "the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Id*. A plaintiff need not establish that the

5

1  policy actually suppressed or inhibited his speech; rather, "a plaintiff need only show that the
2  defendant 'intended to interfere' with the plaintiff's First Amendment rights and that it suffered
3  some injury as a result." *Id.*

4  Plaintiff alleges that defendants notified him that they were going to implement a policy
5  "that would stop any further attempts by Lull to make his tax payments in One Dollar Bills," and
6  that such a policy precluded him from making his payments. ECF No. 1 at 1, 4-5. Thus, not only
7  does plaintiff allege that the policy was implemented to curtail him from engaging in protected
8  speech, he alleges that the policy achieved its objective. Accordingly, the complaint sufficiently
9  states a First Amendment retaliation claim.

10       C.      <u>Substantive Due Process</u>

11 Plaintiff alleges that defendants violated his substantive due process rights because their
12 policy to not accept coins or one-dollar bills as payment deprived him of his ability to protest.
13 ECF No. 16 at 9-10. Defendants argue that the claim fails because plaintiff does not have a
14 substantive due process right to select the form of payment. ECF No. 17-1 at 5.

15 Dismissal of plaintiff's substantive due process claim is appropriate, but not for the reason
16 advanced by defendants. Plaintiff's substantive due process claim is predicated on the same
17 theory as his First Amendment retaliation claim—i.e., that the policy was enacted in retaliation
18 for criticizing defendants and to curtail further protests. As the Supreme Court has explained, "if
19 a constitutional claim is covered by a specific constitutional provision, such as the Fourth or
20 Eighth Amendments, the claim must be analyzed under the standard appropriate to that specific
21 provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S.
22 259, 272 n.7 (1997); *see Hufford v. McEnaney*, 249 F.3d 1142 (9th Cir. 2001) ("[B]ecause the
23 First Amendment explicitly covers [the plaintiff's retaliation] claim, the First Amendment, not the
24 Fourteenth Amendment's guarantee of substantive due process, should guide the analysis of the
25 plaintiff's claims.") (quotations omitted). Accordingly, plaintiff may only proceed with his First
26 Amendment retaliation claim, and his substantive due process claim must be dismissed.[4]

27 ─────────────
28     [4] At the hearing on defendants' motion, the court expressed its intention to deny
defendants' motion as to plaintiff's substantive due process claim. However, upon further review

6

D. Equal Protection

To state a claim for discrimination under the Equal Protection Clause, plaintiff must allege that defendant "acted with an intent or purpose to discriminate against plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). If plaintiff is not a member of a protected class, he may assert an equal protection claim as a "class of one" by alleging that defendants intentionally treated him differently than other similarly situated individuals and without a rational basis for doing so. *See Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (noting that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'"); *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (confirming that the purpose of the equal protection clause, including "class of one" claims, is to protect against "intentional and arbitrary discrimination"). Discriminatory intent for equal protection purposes "implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action . . . because of . . . its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. V. Feeney*, 442 U.S. 256, 279 (1979) (citation and quotations omitted).

Here, plaintiff has failed to adequately allege that he was treated differently than similarly-situated persons. Although he does allege that he witnessed "a lady identified as Phoebe" make an approximately $20,000.00 cash payment, he does not allege that the payment was made in small denominations that would be covered by the policy. Accordingly, plaintiff fails to state an equal protection claim.

Furthermore, at the hearing on defendants' motion to dismiss, plaintiff was unable to specify how he was treated differently than others. In light of this fact, and given that he was previously granted leave to amend this claim, granting further leave to amend would be futile.

/////

---

of relevant authority, the court finds dismissal is appropriate for the reasons stated herein.

*See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (while the court ordinarily would permit a pro se plaintiff to amend, leave to amend should not be granted where it appears amendment would be futile).

### E. Qualified Immunity

The individual defendants argue that they are entitled to qualified immunity. ECF No. 17-1 at 6-7. Qualified immunity protects government officials from liability for civil damages where a reasonable official would not have known that his conduct violated a clearly established right. 5, 483 U.S. 635, 638-39 (1987). In resolving questions of qualified immunity, "courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam). "The first asks whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right." *Id.* (citation and bracketing omitted). "The second prong . . . asks whether the right in question was clearly established at the time of the violation." *Id.* at 1866 (citation omitted).

A right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Clearly established law should not be defined "at a high level of generality"; rather, it "must be particularized to the facts of the case." *White v. Pauly*, —– U.S. ——, 137 S.Ct. 548, 552, 196 L.Ed.2d 463 (2017) (per curiam) (citation omitted). While this standard does not require "a case directly on point," *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011), courts typically identify analogous cases, i.e., ones in which officials "acting under similar circumstances" violated the same constitutional provision, *White*, 137 S.Ct. at 552. To be analogous, however, the case need not be "materially similar." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (stating that, "in an obvious case," general legal standards may clearly establish law "without a body of relevant cases")(citing *Hope*, 536 U.S. at 738)); *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001) (citation omitted) ("[E]ven if there is no closely analogous case law, a right can be clearly established on the basis of common sense.").

/////

8

1 In the Ninth Circuit, to assess whether a right is clearly established, courts first look to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citation omitted). Absent binding precedent, courts should consider all relevant decisional law. *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985).

Defendants argue that they are entitled to qualified immunity because "[a] policy regulating form of payment does not violate clearly established law, because the illegality of restricting forms of payment is not 'beyond debate.'" ECF No. 17-1 at 7. Again, this argument fails to appreciate that plaintiff is alleging a First Amendment retaliation claim. As noted above, it is well established that an "[o]therwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *O'Brien*, 818 F.3d at 933. Accordingly, defendants' contention that its policy was lawful under 31 U.S.C. § 5103 fails to establish that they are entitled to qualified immunity.

III. Conclusion

Accordingly, it is hereby RECOMMENDED that defendants' motion to dismiss (ECF No. 17) be granted in part and denied in part as follows:

1. Defendants' motion be granted as to plaintiff's substantive due process and equal protection claims, and these claims be dismissed without leave to amend; and

2. Defendants' motion be denied as to plaintiff's First Amendment retaliation claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

/////

/////

/////

9

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 10, 2019.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE