UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LULL,<br><br>        Plaintiff,<br><br>    v.<br><br>COUNTY OF SACRAMENTO, *et al.*,<br><br>        Defendants. | Case No. 2:18-cv-01020-MCE-JDP<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED AND THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>ECF Nos. 47, 52<br><br>OBJECTIONS DUE WITHIN 14 DAYS |

   Plaintiff claims that defendants engaged in retaliation forbidden by the First Amendment when they refused to let him pay some of his property taxes with crumpled one-dollar bills emptied from garbage bags, which he brought to the Sacramento County Department of Finance office on tax day. Defendants maintain that, although they do accept some cash payments and had previously accepted one from plaintiff, they refused the payment at issue because it did not comply with the county's requirements for cash payments and because they did not have the resources to process it. Plaintiff disputes that defendants' rejection of his payment was motivated by these considerations, claiming instead that defendants sought to suppress his protest, but he offers scant evidence of this. I recommend that the court grant summary judgment for defendants.

**Background**

In 2017, plaintiff was behind on his property tax payments and was under pressure from his mortgage holder to pay the taxes. ECF No. 47-5 at 22-23. He needed to pay by February 6 to avoid either a fee, a higher interest rate, or default. *Id.* at 23-24. Plaintiff sought to make his tax payment in one-dollar bills, which he alleges was intended as a form of protest. *Id.* at 24. Before attempting such a cash payment, he consulted with the county attorney, Keith Floyd. *Id.* at 78-82. Floyd told him that coins were not an acceptable form of payment, but dollar bills would be acceptable under certain conditions, namely:

1. All tendered bills would have to be in a readily countable condition. This means the bills must be flat when presented. No folded, crinkled, wadded up, rolled, or otherwise altered bills would be accepted.

2. The payment would have to be offered in person at an agreed upon date and time. The Department of Finance needs to ensure that it has adequate staffing resources available to count the money during regular business hours while you or your representative remain present during the process.

3. The Department of Finance would allow for one recount if the counted total appeared to be less than the tax bill amount.

*Id.* at 81-82. Plaintiff arranged with Floyd to pay with 16,400 one-dollar bills on February 6, 2017. *Id.* at 79.

When plaintiff came to the Department of Finance's public counter at 8:10 a.m., the 16,634 bills that he presented did not comply with the requirements that Floyd had laid out. Specifically, some of the bills were folded and crumpled, not flat. *Id.* at 36, 84.[1] Plaintiff dumped them from garbage bags onto the counter, spilling some onto the floor. ECF No. 47-5 at 47. He also taped fake bills to the counter and spoke about his protest, recording it on video. *Id.* at 84. Despite the condition of the bills, the county still accepted them as payment. *Id.* at 22, 86. Processing plaintiff's payment took 35 hours of staff time and involved six staff members. ECF No. 47-5 at 86-87.

---

[1] Plaintiff contests the condition of the bills, but their condition is apparent in the video footage that he took of this encounter. *Cf. Scott v. Harris*, 550 U.S. 372, 380-81 (stating that, at the summary judgment stage, the Court of Appeals "should have viewed facts light depicted by the videotape," given that respondent's "version of events [was] so utterly discredited by the record").

On February 9, Floyd sent plaintiff a letter confirming that plaintiff had made a partial payment on February 6 and stating that he still had an outstanding balance, which was due by April 10, 2017. ECF No. 47-5 at 86. The letter notified plaintiff that "the Department of Finance's duty to serve the rest of the public through its normal budgeted operations prohibits accepting any further payment attempts in single, folded dollar bills. Placing a large pile of dollar bills on the Department of Finance public floor area also creates a significant security risk." *Id.* at 87.

Department of Finance officials recognized the need for a policy on cash acceptance, in part because of the burden of processing plaintiff's payment on February 6. ECF No. 50 at ¶ 20. Thus, in addition to the guidance provided by the county attorney in advance of the February 6 payment, Ben Lamera, the director of finance, implemented an informal cash acceptance policy for the Department of Finance sometime prior to April 10.[2] ECF No. 47-5 at 99-100. The policy stated:

1. Bills must be readily countable (i.e. not folded, crinkled, or otherwise manipulated).

2. Large quantities of bills or coins may not be placed on the public counter, floor, or any other place within the public area. The Tax Collector has the right to refuse the payment in coins of property taxes, penalties and interest.

3. Large quantities of bills must be tendered by the customer in stacks that can be quickly placed in Department counting machines.

4. The limit for non-tax payments made in coin is approximately $150 at a location where there is an automated coin counter and $5 at locations without one.

5. All counting must occur at the public counter with the customer present.

6. For payments involving significant quantities of cash, transactions must be able to be completed in a reasonable amount of time, during regular business hours. The county does not accept partial payments for property tax payments. Any counted cash must be returned to the customer if counting of tendered

---

[2] Plaintiff asserts that it is uncertain whether this policy in this form was in place on April 10 because the written policy was in draft form. ECF No. 50 at ¶ 22. But Lamera's sworn deposition testimony is evidence that the policy was in place on April 10. ECF No. 47-5 at 100-101. And plaintiff does not dispute that he was still subject to the instructions from the county attorney on acceptance of large cash payments, which are largely the same.

3

>    cash is not completed by the close of business, unless the customer offers to make a non-property tax partial payment.

*Id.* at 107-08.

On April 10, 2017, the state tax deadline, plaintiff came to the Department of Finance's public counter without an appointment and attempted to make a tax payment with folded and crumpled one-dollar bills contained in two trash bags.[3] *Id.* at 89. Plaintiff recorded his appearance on video and spoke with members of the public and county employees. *Id.* at 88-90. While he was in line, a security officer approached him and asked that he not dump money on the floor. *Id.* at 88. The officer indicated that he did not know whether plaintiff's form of payment would be accepted. *Id.* Defendant Mark Aspesi, a senior accounting manager, was working at the counter and refused to accept plaintiff's payment. *Id.* There was a line of customers stretching out the door because it was tax day. Aspesi later testified that he refused the payment because the office's staff was busy and it would have taken a long time to count so many dollar bills. *Id.* at 136-41. Plaintiff left without paying his taxes. *Id.* at 77.

Before the court are the parties' cross-motions for summary judgment. ECF Nos. 47, 52. Briefing is complete, and the court heard arguments on December 17, 2020. The matter is now ripe for review.

**Legal Standard**

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

---

[3] April 10 is the last day to pay taxes without penalty. Cal. Rev. & Tax. Code §§ 2618, 2705.

4

1  trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial
2  responsibility" of demonstrating the absence of a genuine issue of material fact. *Id.* at 323. An
3  issue of material fact is genuine only if there is sufficient evidence for a reasonable fact finder to
4  find for the non-moving party. A fact is material if it "might affect the outcome of the suit under
5  the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party
6  demonstrates that summary judgment is appropriate by "informing the district court of the basis
7  of its motion, and identifying those portions of 'the pleadings, depositions, answers to
8  interrogatories, and admissions on file, together with affidavits, if any,' which it believes
9  demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting
10 Fed. R. Civ. P. 56(c)).

11     If the moving party meets its initial burden, the burden shifts to the opposing party to
12 present specific facts that show there to be a genuine issue of a material fact. *See* Fed R. Civ. P.
13 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that
14 there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 587. The
15 party is required to tender evidence of specific facts in the record in support of its contention that
16 a factual dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing
17 party is not required to establish a material issue of fact conclusively in its favor; it is sufficient
18 that "the claimed factual dispute be shown to require a jury or judge to resolve the parties'
19 differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors
20 Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential
21 element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*,
22 477 U.S. at 323.

23     The court must apply standards consistent with Rule 56 to determine whether the moving
24 party demonstrated there to be no genuine issue of material fact and showed judgment to be
25 appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).
26 "[A] court ruling on a motion for summary judgment may not engage in credibility
27 determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir.
28 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the

nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002).

**Discussion**

At issue is a single claim of First Amendment retaliation. To prevail, plaintiff would need to show that:

> (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).[4] If plaintiff cannot show any one of the three required elements of retaliation, his claim cannot succeed.

As for the first required element, plaintiff offers little to back up his claim that he engaged in constitutionally protected activity. Speech is protected by the First Amendment, but making a payment in a particular form is conduct, not speech—and conduct receives far more limited First Amendment protection.[5] Although plaintiff apparently intended his choice of a form of payment—crumpled and folded one-dollar bills presented on tax day—to have an expressive element, it might merit no First Amendment protection at all. In *United States v. O'Brien*, 391 U.S. 367, 376 (1968), defendant urged that a draft protestor's public destruction of his draft card was "symbolic speech" shielded from prosecution by the First Amendment. The Supreme Court rejected this proposition, stating: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea . . . ." *Id.* at 376. In the tax context, courts regularly rebuff First Amendment challenges. *See Brown v. Comm'r*, No. 83-1764-E(M), 1984 WL 267, at *3 (S.D. Cal. Apr. 13,

---

[4] Plaintiff questions the county's ability to regulate cash payments without a written and formally adopted policy, but the county appears to have implied powers to regulate cash payment. *See* Cal. Gov't Code §§ 23003, 23004(e); *cf. In re Reyes*, 482 B.R. 603, 606 (D. Ariz. 2012) (finding that the government may specify the form that transfers of legal tender may be required to take). Even if the county were acting on a mistaken belief that it had the power to regulate cash payments informally, that would not change the analysis of plaintiff's retaliation claim.

[5] Although plaintiff engaged in some protected activity during both his cash-payment attempts—making speeches, filming them, distributing fake dollar bills, etcetera—the only activity that was regulated, and the basis for plaintiff's complaint, was his manner of payment.

1984) ("[P]laintiff's choice of the tax return as his forum must yield to the need of the government to collect revenues in order to ensure its very existence."); *Corrigan v. City of Newaygo*, 55 F.3d 1211, 1215 (6th Cir. 1995) ("The tax-paying requirement is a means of collecting taxes, not a means of restricting political speech or the right to vote."); *Non-Resident Taxpayers Ass'n v. Municipality of Philadelphia*, 341 F. Supp. 1139, 1146-47 (D.N.J. 1971), *aff'd*, 478 F.2d 456 (3d Cir. 1973).

But even if I accept the questionable proposition that the relevant activity was protected by the First Amendment, plaintiff has failed to offer evidence sufficient to satisfy the third element of retaliation: he has not shown that there was a substantial causal relationship between his purported constitutionally protected activity and the county's adverse action—its refusal to accept his second payment. On the other hand, defendants point to copious evidence in the record that plaintiff's form of payment was refused because the bills were not readily countable and could not be processed that day.

The county advised plaintiff in advance of multiple requirements with which his cash payment would need to comply, including that he would need to present dollar bills in a countable format, meaning not folded or crumpled; he would need to make the payment at an agreed-upon time; and a cash payment would not be accepted if it could not be counted by the end of the business day. ECF No. 47-5 at 81-82, 86-87. The county let plaintiff pay once with non-compliant one-dollar bills, warning him that he would have to present bills in countable form in the future. *Id.* at 86-87. In response, plaintiff attempted a second payment in crumpled one-dollar bills, arriving without an appointment on tax day, when county resources were stretched thin. Plaintiff chose to ignore the county's requests at the risk that his payment would not be accepted—not because it was in one-dollar bills, but because it did not comply with the operational directives of county employees that bills must be flat and readily countable. The conclusion that operational considerations drove the refusal of plaintiff's second payment is supported by deposition testimony of county employees, written communications between plaintiff and the county's attorney, and plaintiff's own video recording of the second payment attempt.

7

It is telling that both times that plaintiff brought trash bags full of money to the county office, he was permitted to engage in speech. ECF No. 47-5 at 84-85, 88-90. He was able to film his interactions on April 10. *Id.* at 88-90. He and his videographer were permitted to shove crumpled dollar bills through the service window, and he was able to speak out on video to county employees and members of the public. *Id.* The evidence does not show that the county sought to shut down his protest, but rather that plaintiff ignored reasonable restrictions on cash payments, of which he had advance notice, and that this led to the rejection of his payment. Nothing in the record indicates that plaintiff's payment would have been rejected had his bills been stacked and readily countable.[6] Thus, defendants have met their initial responsibility of demonstrating the absence of a genuine issue of material fact as to the lack of a substantial causal connection between plaintiff's protected activity and the adverse action, and the summary judgment burden shifts to plaintiff to present counterevidence.

Plaintiff speculates that county officials refused his payment because they wanted to shut down his protest. In support, he states in his declaration: "From February 6, 2017 to April 10, 2017, Aspesi informed Lull on at least two occasions, that under no circumstances would his protest be allowed anymore." ECF No. 49 at 11. This statement is self-serving, lacks detailed facts, and is unsubstantiated by other evidence. As such, it is insufficient to create a genuine issue of material fact as to whether plaintiff's speech motivated defendants to punish plaintiff and allow plaintiff's First Amendment retaliation claim to survive summary judgment. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony."); *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Plaintiff also cites the letter from county counsel that he received after his February 6 payment, but this letter merely reiterates the requirements for cash payments. ECF No. 47-5 at 86-87. And he cites a portion of Aspesi's

---

[6] Other cash payments were received that day. A person in line near plaintiff paid with cash, and the transaction took only ten to fifteen minutes. ECF No. 47-5 at 140-41.

deposition, ECF No. 50 at ¶ 32; the court has examined the transcript and discerns no evidence indicating that Aspesi had an ulterior motive for refusing the payment.[7] ECF No. 50-1. Finally, plaintiff cites his first amended complaint, but plaintiff cannot rely on bald assertions in his unverified complaint at the summary judgment stage; he must put forth evidence that could be presented in admissible form at trial. ECF No. 50 at ¶ 32; *see* FRCP 56(c); *Moran v. Selig*, 447 F.3d 748, 759 (9th Cir. 2006) (holding that the plaintiff's complaint "cannot be considered as evidence at the summary judgment stage because it is unverified").

In sum, the evidence indicates that operational practicalities, including the need to accomplish work in a timely manner and to provide expeditious service to other customers, motivated the refusal of plaintiff's second cash payment. Plaintiff asks the court to infer that a desire to curtail his free speech was the real motivator, but there is no evidence, other than a conclusory and self-serving affidavit, from which to draw that inference. As such, plaintiff has not supported a critical element of his retaliation claim: he has failed to provide evidence of a substantial causal relationship between defendants' adverse action and his purportedly protected activity. Thus, even when viewing the evidence in the light most favorable to plaintiff, his retaliation claim cannot survive defendants' motion for summary judgment.

Since I find summary judgment appropriate for defendants on the merits, I do not reach defendants' arguments that Lamera and Aspesi are entitled to qualified immunity.

**Conclusion**

Defendants have carried their burden on summary judgment by showing that at least one of the elements of plaintiff's retaliation claim is not met. Plaintiff has not presented counterevidence raising a genuine issue of material fact. For these reasons, defendants' motion for summary judgment, ECF No. 47, should be granted and plaintiff's motion for summary judgment, ECF No. 52, should be denied.

---

[7] The court had portions of Aspesi's deposition filed as an attachment to plaintiff's factual allegations so that they would be included in the record. ECF No. 50-1. Notably, when Aspesi was asked whether he thought that the rejected payment was a form of protest, he answered that he did not believe it was and reiterated that he rejected the payment for operational reasons, considering the resources needed to process it. *Id.* at 19-20.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the service of the findings and recommendations, the parties may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:    August 31, 2021

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE